IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LILLIAN J. CUADRADO CONCEPCIÓN,

**Plaintiff,**

v.

UNITED STATES OF AMERICA,

**Defendant.**

CIVIL NO. 19-1430 (RAM)

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge.

On September 30, 2019, this Court issued an Order directing the parties to show cause as to why the case should not be transferred to the U.S. District Court for the Southern District of Georgia pursuant to 28 U.S.C. § 1404(a). *See* Docket No. 24. Having considered the parties' responses filed at Docket Nos. 27 and 28 respectively and for the reasons set forth herein, the Court orders the transfer of this case to the Southern District of Georgia, Savannah Division.

I.   **BACKGROUND**

In the *Complaint* filed on May 1, 2019, plaintiff Lillian J. Cuadrado Concepción ("Cuadrado" or "Plaintiff") seeks damages arising from alleged abuse and a sexual assault perpetrated by her then husband JAG, Jr. (Docket No. 5 at 9-13). At the time of the alleged events, JAG, Jr. was enlisted in the United States Army

and assigned to Fort Stewart Georgia. *Id.* Further, all the operative facts alleged in the *Complaint* took place in the State of Georgia. *Id*. at 3-8. Plaintiff alleges that she notified the Army repeatedly about her then-husband's mental health issues and the threat he posed to her. *Id*. at 4-8. Plaintiff further avers that despite her notice to the Army and reassurances by Army personnel that (1) JAG, Jr.'s mental issues would be addressed and (2) that he would not return to the family home until he was stable, JAG, Jr. continued to threaten her well-being and violated both a Military Protective Order and a Family Protective Order issued by a Superior Court in Chatham, Georgia. *Id*. at 7. Lastly, Plaintiff alleges that because of the acts and omissions by the Army she suffers multiple disorders which include major depressive disorder, battered spouse syndrome and dysphonia. *Id.* at 8.

In their *Joint Case Management Memorandum*, filed on September 26, 2019, the parties (1) reiterated that the operative facts occurred within Chatham County, Georgia; (2) indicated that the bulk of the potential witnesses were located outside the district of Puerto Rico; and (3) invoked claims and/or defenses under Georgia law. (Docket No. 23). On September 30, 2019, after analyzing the *Complaint* and the *Joint Case Management Memorandum*, the Court ordered the parties to show cause as to why the case should not be transferred to the United States District Court for the Southern District of Georgia pursuant to 28 U.S.C. § 1404(a).

(Docket No. 24). Both parties filed motions in compliance with this order on October 25, 2019. (Docket Nos. 27 and 28).

## II. APPLICABLE LAW

### A. Transfer under Section 1404(a) of the Judicial Code

Section 1404(a) of the Judicial Code of the United States provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). This section codified and liberalized the common law doctrine of *forum non conveniens* which was embraced by the Supreme Court in Gulf Oil Co. v. Gilbert, 330 U.S. 501 (1947). In Norwood v. Kirkpatrick, the U.S. Supreme Court stated that "we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience" than the showing previously required under the doctrine of *forum non conveniens*. Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955).

In terms of practical considerations when determining whether to grant a transfer, the relevant private interest factors to be examined by the Court are:

> [T]he relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling and the cost of obtaining the attendance of willing witnesses; possibility of view of the premises;

>     if view would be appropriate to the action; and all other practical problems that make trial of a case, easy, expeditious and inexpensive.

Gulf Oil Co., 330 U.S. at 508-509; see also Aquakem Caribe, Inc. v. Kemiron Atlantic, Inc., 218 F.Supp. 2d 199, 201-202 (D.P.R. 2002). Public interest factors also have a bearing on the transfer determination. Id. at 509. Said relevant public interest factors have included "the trial judge's familiarity with the applicable state law, the local interest in adjudicating disputes at home; court congestion in the two forums, [and] the fairness of placing the burden of jury duty on the citizens of the state with greater interest in the dispute." NPR, Inc. v. American International Insurance Company of Puerto Rico, 242 F. Supp. 2d 121, 125 (D.P.R. 2003) (internal quotations omitted). Considering the aforementioned factors, the decision to transfer under 28 U.S.C. § 1404(a) necessarily requires an "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

**B. The Court's discretion to transfer**

The decision to transfer rests within the Court's discretion. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977). Furthermore, the Court need not determine the best venue, but "merely a **proper** venue." Astro-Med v. Nihon Kohden of America,

Civil No. 19-1430 (RAM)                                                    5

591 F.3d 1, 12 (1st Cir. 2009) (citing Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001)).

Courts may transfer an action under Section 1404(a) on their own initiative. *See* Desmond v. Nynex Corp., 37 F.3d 1484 (1st Cir. 1994) ("It is well settled that a court may transfer a case sua sponte pursuant to 28 U.S.C. §§ 1404(a)."); Caldwell v. Palmetto State Savings Bank, 811 F.2d 916, 919 (5th Cir. 1987); Lead Industries Association, Inc. v. Occupational Safety and Health Administration, 610 F.2d 70, 79 n.17 (2d Cir. 1979); Mobil Corp. v. S.E.C., 550 F. Supp. 67, 69 (S.D.N.Y. 1982).

### III. ANALYSIS

**A. This action could have been brought in the Southern District of Georgia:**

Jurisdiction is premised upon the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq*. Section 1402(b) of the Judicial Code of the United States provides that:

> A civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

*See* 28 U.S.C. § 1402(b). Therefore, in the present case, venue is proper either where Plaintiff resides, the District of Puerto Rico, or where the act or omission occurred, the Southern District of Georgia, Savannah Division. Thus, the Southern District of

Georgia, Savannah Division, is a "district or division where [this action] might have been brought." *Id.* § 1404(a).

### B. Private interest factors:

1. *The convenience of the parties*

In her *Motion in Compliance with Order/ In Opposition to Transfer*, Plaintiff contends that the District of Puerto Rico is the proper venue because she has limited economic resources to litigate outside of Puerto Rico and because her choice of forum is entitled to greater deference. (Docket No. 27 at 4-7). With respect to Plaintiff's financial condition, the Court notes that it has not deterred her from securing private legal representation who, despite the advent of video teleconferencing, would also likely have to travel to Georgia and places beyond for at least some depositions if the case remained in the District of Puerto Rico. Moreover, she would have video teleconferencing at her disposal if the case is transferred to Georgia. Turning to case-related travel by Plaintiff herself, there is no allegation that her condition bars her from doing so and her attorney may well be able to arrange for her deposition to be taken in Puerto Rico thereby limiting her travel to Georgia to the eventuality that a trial is held. *See e.g.* Hernandez v. Hendrix Produce, Inc., 297 F.R.D. 538, 539-40 (S.D. Ga. 2014).

Turning to Plaintiff's choice of forum, Cuadrado correctly notes that there is a "strong presumption" in her favor. *See* Coady

v. Ashcraft & Gerel, 223 F.3d 1 (1st Cir. 2000) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

*However*, in cases where the operative events did not take place in the plaintiffs' chosen district, "courts generally place less importance on this factor ... even where ... plaintif[f] resides there." Demers, Jr. v. Pilkington N. Am., Inc., 2010 WL 4683780, at *6 (D.N.H. 2010) (quoting Commodity Futures Trading Comm'n v. Cromwell Fin. Servs., Inc., 2006 WL 435451, at *4 (D.N.H. 2006)).

As discussed above, the alleged actions and omissions leading to Plaintiff's medical conditions, i.e. the operative facts of this case, took place in Chatham County within the State of Georgia. (Docket No. 5 at 3-8). The locus of the operative facts is where the alleged misconduct occurred and not where Plaintiff received subsequent medical treatment. *See* Burgos v. United States 2017 WL 2799172 at *2 (S.D.N.Y. 2017).

2. *The convenience of the witnesses*

"When considering a motion to transfer venue, '[t]he most important factor in deciding whether to transfer an action is the convenience of witnesses.'" Colón Pérez v. Metan Marine, Inc., 2018 WL 1664697, at *9 (D.P.R. 2018) (quoting Demers, Jr., 2010 WL 4683780, at *6). To determine the convenience of witnesses, "courts look at 'the materiality, nature, and quality of each witness, in addition to the number of witnesses in each District.'" *See* Burgos,

2017 WL 2799172, at *2 (quoting Guccione v. Harrah's Mktg. Servs. Corp., 2009 WL 2337995, at *8 (S.D.N.Y. 2009)). Moreover, "district courts give the convenience for non-party witnesses even greater weight." Colón Pérez, 2018 WL 1664697, at *9 (collecting cases).

In their *Joint Case Management Memorandum*, the parties identified fifteen (15) fact witnesses, fourteen (14) of which reside or are stationed in the continental U.S. (Docket No. 23 at 15-17). Further, these fourteen (14) witnesses' proffered testimony is presumptively relevant to issues of both liability and damages. *Id.* Plaintiff is the only witness located in the District of Puerto Rico who witnessed the alleged acts or omissions upon which her claims rest.

Plaintiff identified five (5) witnesses, which are to wit three (3) Georgia residents, one (1) Florida resident, and one (1) Puerto Rico resident (herself). *Id.* at 15-16. The Georgia residents include two (2) treating physicians and one (1) counselor, all of whom work in Savannah, Georgia. (Docket Nos. 23 at 15 and 27 at 1-2). Savannah, Georgia is within the jurisdiction of the Southern District of Georgia, Savannah Division. *See* 28 U.S.C. § 90(c)(3) (The Southern District of Georgia's Savannah Division "comprises the Counties of Bryan, Chatham, Effingham, and Liberty"). On the other hand, the Florida resident is a treating physician who works in Orlando. (Docket Nos. 23 at 15 and 27 at 2). That witness' address in Orlando, Florida is 405 miles from the Southern District

of Georgia's Savannah Division, that is within driving distance.[1] Thus, the Southern District of Georgia is more convenient than the District of Puerto Rico even for the witnesses who do not reside in Georgia.

On their part, Defendant identified ten (10) witnesses in the *Joint Case Management Memorandum*, including Plaintiff's former husband and alleged attacker. (Docket No. 23 at 16-17). Save for three (3) witnesses who are no longer with the Army, all the witnesses listed by Defendant in the *Joint Case Management Memorandum* either reside or are stationed in military bases in the continental U.S.. (Docket No. 28 at 4-5).

In her response to the Court's order to show cause, Plaintiff added four (4) Puerto Rico based physicians whose testimony is presumptively relevant to issues of her medical treatment and damages. (Docket No. 27 at 2). Defendant in turn, noted that additional witnesses may include Savannah-Chatham Metro Police Officers and JAG, Jr.'s former Commanding Officer who is stationed in Fort Bragg, North Carolina. (Docket No. 28 at 5). According to the *Complaint*, JAG, Jr.'s behavior required that Savannah-Chatham Metro Police Officers intervene four (4) times. (Docket No. 5 ¶¶ 27, 31, 50 and 54). The identification of two (2) current witnesses and one (1) potential additional witness located in Puerto Rico

---

[1] This data comes from Google Maps and was last checked on November 7, 2019.

does not alter the conclusion that most of the witnesses reside or work outside Puerto Rico.

Lastly, it is worth noting that Fed. R. Civ. P. 45(c) limits court's subpoena power to compel a person to attend a trial, hearing, or deposition to a 100-mile radius from where the individual resides, is employed, or regularly engages in business. *See* Estate of Berganzo-Colon v. Ambush, 2014 WL 988783, at *2 n. 3 (D.P.R. 2014) and Castro v. United States, 104 F.R.D. 545, 551 n.4 (D.P.R. 1985). Therefore, this Court would not have the power to compel the attendance of the vast majority of the parties' proffered witness if the case remained in the District of Puerto Rico.

Thus, based on the information in the parties' *Joint Case Management Memorandum* and their responses to the Court's Order to show cause, the District of Georgia is a more convenient forum for most of the witnesses in this case.

3. *The relative access to sources of proof*

Technological advances have rendered the location of records a less significant factor than it used to be. However, "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." In re Volkswagen of Am., Inc., 545 F.3d 304, 316 (5th Cir. 2008). Records in this case are more readily accessible from the Southern District of Georgia than from the

District of Puerto Rico. While Plaintiff's current medical records are in Puerto Rico, her prior medical records as well as the relevant police, civil justice and military records are located within the District of Georgia. As noted earlier, Plaintiff was treated by two (2) physicians and a counselor who work in Savannah and Plaintiff obtained both a Military Protective Order and a Family Protective Order from a Superior Court in Chatham, Georgia. (Docket No. 5 ¶¶ 45 & 51). Thus, records related to these matters would logically be located in Georgia.

All told, the convenience of witnesses and relative access to the sources of proof also favors transfer to the Southern District of Georgia.

**C. The Public Interest Factors:**

1. *Familiarity with the applicable law:*

Plaintiff has asserted claims governed by Georgia Law. (Docket No. 23 at 1-4). It is beyond peradventure that federal judges sitting in the Southern District of Georgia are more familiar with Georgia law than judges sitting in the District of Puerto Rico. *See* Scholtens v. Gyrus Acmi, Inc., 2019 WL 2528377, at *8 (D. Mass. 2019); Allstate Ins. Co. v. Hague, 449 U.S. 302, 326 (1981) ("For judges are presumably familiar with their own state law and may find it difficult and time consuming to discover and apply correctly the law of another State."). While Plaintiff downplays the difficulties of applying Georgia law while sitting

in the District of Puerto Rico, "'[a] court's familiarity with the applicable law has ... been recognized in this circuit as an appropriate factor in deciding a motion to transfer.'" Scholtens, 2019 WL 2528377, at *8 (quoting Galley v. Kreutzig, 2015 WL 2349373, at *7 (D. Me. 2015)). Consequently, familiarity with the applicable law weighs in favor of transfer to the Southern District of Georgia.

    2. *Court Congestion*

The "District Court of Puerto Rico has one of the most congested criminal and civil dockets in the nation." Gibson v. Ecoquest, Inc., 2017 WL 2859744, at * 5 (D.P.R. 2017) (internal quotations omitted). *See also* Marquez v. Drugs Unlimited, Inc., 737 F. Supp. 2d 66, 68 (D.P.R. 2010) ("In this extremely congested district, both on the civil and criminal dockets, it is ... extremely important for the court to effectively manage its caseload."). For example, during the twelve-month period ending on March 31, 2019, the U.S. District Court for the District of Puerto Rico had 1,220 new cases filed, terminated 1,349 cases and had 1,971 civil cases pending. By contrast, during the same twelve-month period, the Southern District of Georgia had 1,000 new cases filed, terminated 908 cases and had 933 cases pending.[2] The

---

[2] *See* Table C – U.S. District Courts – Civil Federal Judicial Caseload Statistics (March 31, 2019), U.S. COURTS, https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2019/03/31 (last visited Nov. 6, 2019).

administrative difficulties flowing from court congestion favor transfer to the Southern District of Georgia, Savannah Division.

## IV.  CONCLUSION

In the case at bar, the operative facts took place within the Southern District of Georgia, Savannah Division, and that transferee District is more convenient to most of the witnesses. These two factors are preeminent in the Court's decision to order a transfer of the present case to Georgia.

For the reasons set forth herein, the Clerk shall transfer this case to the United States District Court for the Southern District of Georgia, Savannah Division. This case is now closed in the District of Puerto Rico for statistical purposes.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 7th day of November 2019.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge