IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

```
LILLIAN J. CUADRADO-CONCEPCIÓN,  )
                                 )
     Plaintiff,                  )
                                 )
v.                               )    CASE NO. CV419-305
                                 )
UNITED STATES OF AMERICA,        )
                                 )
     Defendant.                  )
                                 )
```

## O R D E R

Before the Court are Defendant's Motion to Dismiss for Lack of Subject Matter jurisdiction (Doc. 37) and the parties Consent Motion to Stay (Doc. 38). For the reasons that follow, Defendant's Motion to Dismiss (Doc. 37) is **GRANTED** and parties Consent Motion to Stay (Doc. 38) is **DISMISSED AS MOOT.**

### BACKGROUND

The issue in this case is whether Plaintiff's claims properly fall into exceptions with the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679 et seq. According to the complaint, Plaintiff married her husband, Juan A. Guzmán, Jr. ("JAG, Jr."), an enlisted service member, in 2009. (Doc. 5 at ¶¶ 4-5.) She moved in with him and later in 2009, JAG, Jr. was deployed to Iraq. (Id. at ¶¶ 7; 11.) Plaintiff claims that when JAG, Jr. returned from deployment, he demonstrated changes in his behavior including an alcohol addiction, disrespectfulness,

aggression, unresponsiveness, and other behaviors. (Id. at ¶ 14.) During 2010 and 2011, Plaintiff notified the Army of her husband's problems and requested help, however, on or about January 4, 2011, JAG, Jr. left their home and moved to the base unexpectedly. (Id. at ¶¶ 16, 17.) Plaintiff notified her husband's superior, CPT Humphrey, of her concerns about her safety and her husband's behavior and the Army referred them to marriage counseling. (Id. at ¶¶ 18, 19.) At some point, JAG, Jr. received psychiatric evaluation and treatment. (Id. at ¶ 19.) During one marital counseling session, JAG, Jr. walked out of the session and Plaintiff informed the therapist that she was afraid of how her husband would respond to her when she got home. (Doc. 5 at ¶ 22.) Plaintiff alleged that JAG, Jr. displayed anger at the counseling sessions and the Army noticed the anger or should have noticed the anger. (Id. at ¶ 23.) Plaintiff also alleged that her husband was angry at her at home and threatened her life for disclosing their home life in their counseling sessions. (Id. at ¶ 24.)

On April 13, 2011, Plaintiff called Savannah-Chatham Metropolitan Police because her husband appeared to be having a bad reaction to his medications. (Id. at ¶ 27.) He was transported by the police to a hospital where the Army intervened and further transported him to the base. (Id. at ¶¶ 29, 30.) Then, on April 16, 2011, Plaintiff called the police

because JAG, Jr. became hostile towards her for no reason, raised his fist to her and threatened to punch her in the throat. (Id. at ¶ 31.) JAG, Jr. admitted to the police that he had threatened his wife, he used medication, he was in the Army, he had been deployed to the Middle East and he was being treated for Post-Traumatic Stress Disorder ("PTSD"). (Id. at ¶ 32.) JAG, Jr. was arrested on that date for simple assault. (Id. at ¶ 33.)

After he was arrested, 1LT Burch came to Plaintiff's home and asked her to bail JAG, Jr. out of jail and requested she drop the charges. (Id. at ¶¶ 34; 38.) No military protection order was issued at the time, or other safety measures, and Plaintiff trusted Burch's representations that the Army would care for JAG, Jr. and that he would not return to their home until he was stable. (Id. at ¶¶ 35-37.) Plaintiff complied. (Id. at ¶ 38.) On or about June 10, 2011, Plaintiff was raped by JAG, Jr. and she notified the Army marriage counselor of the rape on or about June 13, 2011. (Id. at ¶¶ 39, 40.) The Army counselor took no action upon report of the rape. (Id. at ¶ 42.) Plaintiff notified the Installation Victim Advocate of her husband's verbal threats of violence on August 29, 2011. (Doc. 5 at ¶ 43.)

On August 30, 2011, a military protection order ("MPO") was issued for Plaintiff's safety and well being and was effective until December 1, 2011. (Id. at ¶ 45.) However, JAG, Jr. violated the MPO by contacting her numerous times by telephone.

3

(Id. at ¶ 46.) Plaintiff contacted Army Victim Advocate Ochoa, who in turn contacted CPT Byerly, regarding the MPO violations and Ochoa assured Plaintiff that the situation would be taken care of. (Id. at ¶ 47.) However, on the same day, JAG, Jr. came to their home. (Id. at ¶ 49.) Plaintiff called the police about her husband's presence at the home but was informed that they could not enforce the MPO. (Id. at ¶ 50.) Plaintiff then sought and received a family violence protective order from the Superior Court of Chatham County on September 27, 2011. (Doc. 5 at ¶ 51.) On October 21, 2011, JAG, Jr. violated the MPO and the family violence protective order by contacting her through a third party, Tony Turbin, an Army chaplain. (Id. at ¶¶ 52-53.) Plaintiff notified the police and JAG, Jr. was arrested. Plaintiff and JAG, Jr. ultimately divorced in 2015. (Id. at ¶ 60.)

Plaintiff filed this action against Defendant the United States of America ("the Government") alleging that the Government breached its duty to protect Army dependents, that the Government was negligent in handling her complaints about JAG, Jr., the Government negligently supervised JAG, Jr., and negligently inflicted emotional distress. (Doc. 5 at 9-12.) Plaintiff alleges that she suffers multiple damages as a result of the acts and omissions by the Government, including conversion reaction with motor symptoms, PTSD, Major Depressive

4

Disorder, Battered Spouse Syndrome, and Severe Voice disorder secondary to partial bilateral vocal cord paralysis. (Id. at ¶ 61.)

**STANDARD OF REVIEW**

A motion to dismiss for lack of subject matter jurisdiction challenges the authority of the court to hear and decide the case before it. Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms: "facial attacks" and "factual attacks." Murphy v. Sec'y, U.S. Dep't of Army, 769 F. App'x 779, 781 (11th Cir. 2019) (citing Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003)). A facial attack on the complaint "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." Id. (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). A factual attack, on the other hand, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. A court is "permitted to look beyond the pleadings to evaluate the merits of the jurisdictional claims, despite the existence of disputed material facts." Glob. Aerospace, Inc. v. Platinum Jet Mgmt., LLC, 488 F. App'x 338, 340 n.2 (11th Cir. 2012) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). In the instant

5

case, the Government challenges the Court's subject matter jurisdiction without disputing any of the alleged facts in the Complaint and without raising matters outside of the pleadings. Therefore, the Government has brought a facial attack on subject matter jurisdiction, and, accordingly, the Court will consider the allegations of the Complaint as true for purposes of deciding this issue. See Lawrence, 919 F.2d at 1529. A court must dismiss an action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). The burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction. Murphy, 769 F. App'x at 782.

**ANALYSIS**

In its motion to dismiss, the Government argues that some of the FTCA's exceptions, namely the discretionary-function and intentional-tort exceptions, apply and that, because the Government retains its sovereign immunity, most of Plaintiff's claims must be dismissed for lack of subject matter jurisdiction. (Doc. 37 at 6.) Further, the Government argues that Plaintiff's fourth claim is also barred by the Government's sovereign immunity because there is no analogous private party liability under state law. (Id.)

I. THE DISCRETIONARY-FUNCTION EXCEPTION TO THE FTCA AND ITS APPLICATION TO COUNTS 1, 2, 3, AND 5

6

The FTCA waives the United States' sovereign immunity from suit in federal courts for its employees' negligence. See 28 U.S.C. § 1346(b). However, the discretionary function exception provides that the United States' sovereign immunity is not waived as to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary-function exception is applied by answering two questions. " 'First, we consider the nature of the conduct and determine whether it involves 'an element of judgment or choice.' " Douglas v. United States, 814 F.3d 1268, 1273 (11th Cir. 2016) (quoting Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997)). "[C]onduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id. (internal quotation marks and citations omitted). " 'Second, if the conduct at issue involves the exercise of judgment, we must determine whether that judgment is grounded in considerations of public policy.' " Id. (quoting Ochran, 117 F.3d at 499).

7

Plaintiff's first cause of action, the Government's breach of the duty to protect Army dependents, is based upon a "special relationship" between Plaintiff and the Government and is premised on the Army's handling of her complaints of JAG, Jr.'s actions, specifically the Army's referral to marital counseling, the services at the Installation Victim Advocate, the issuance of the MPO, and Burch's assurances about the Army's handling of JAG, Jr. (Doc. 5 at 9.) Plaintiff states that the Army's knowledge that inaction and/or negligent handling of the situation could lead to harm. (Id.) Plaintiff's second, third, and fifth counts are based on the same conduct: the Army's negligent handling of her complaints regarding JAG, Jr.'s conduct and threats against Plaintiff, the failure to act promptly to the complaints made by Plaintiff, and the failure to supervise JAG, Jr. (Id. at 10-11.)

In its motion, the Government first argues that Plaintiff fails to demonstrate that the conduct complained of was a result of failure to comply with a federal statute, regulation, or policy. (Doc. 37 at 8.) The Court agrees that Plaintiff has not met her burden on this point. Plaintiff cites to no statute, regulation, or policy that mandated certain actions be taken by the Army after a domestic violence situation was reported. In the absence of such evidence, the Court finds that the

8

challenged actions were discretionary. Swafford v. United States, 839 F.3d 1365, 1370 (11th Cir. 2016).

The Court must now consider whether that judgment is grounded in considerations of public policy. Id.; Mesa v. United States, 123 F.3d 1435, 1438 (11th Cir. 1997). "The exception is designed to prevent judicial second guessing of decisions grounded in social, economic, and political policy." Swafford, 839 F.3d at 1370 (internal quotation marks and citations omitted). The Government argues that the decisions and choices that the Army made, by and through its agents, are based on or at least susceptible to policy considerations. (Doc. 37 at 11.) The Government argues that the decisions the Army took including "Captain Humphrey's decision to refer Guzmán to counseling and psychiatric treatment rather than pursue issuance of a MPO in response to [Plaintiff's] concerns" was "based on competing policy considerations . . . including the seriousness and credibility of the threat, the availability and effectiveness of resources needed to protect the potential victim, the military's course of dealing with the soldier, and the soldier's individual rights." (Id.) The Court agrees. The decision of whether, and how, to protect a victim necessarily involves numerous policy considerations including resources, the seriousness of the allegations, and the soldier's privacy and rights, among others. See Ochran, 117 F.3d at 501 (holding that the AUSA's decisions

9

on how to provide protection to a victim and whether to inform other components of the Justice Department of a threat to a victim fall within the discretionary function exception); Shuler v. United States, 448 F. Supp. 2d 13, 21 (D.D.C. 2006), aff'd, 531 F.3d 930 (D.C. Cir. 2008); Wilburn v. United States, 616 F. App'x 848, 861 (6th Cir. 2015) ("The government's management of its resources and response to threats invokes policy concerns about soldiers' privacy, discipline, and the safety of the military community."). Plaintiff's other claims, including the claim for negligent supervision of JAG, Jr., also involve policy considerations that the Army must weigh including the need for supervision or treatment and at what level, the seriousness and imminence of the risk posed by the solider, the Army's resources, and the rights of the soldier. All these factors come into play when determining whether, and how, to supervise or monitor a solider returning from deployment and how to handle a reported domestic violence situation.

Plaintiff argues and relies on the "special relationship" between Plaintiff and the Army. The Court acknowledges that many courts have found that where the Government assumes a specific duty—thus engendering detrimental reliance on that promise of specific action—the discretionary-function exception is limited. See Ochran, 117 F.3d at 506 n.7 (suggesting that had the AUSA promised "to perform specific actions on [plaintiff's] behalf,"

10

then a different result might have been reached in the case due to the voluntary assumption of specific duty that involved no policy judgments); Wilburn, 616 Fed. Appx. at 861 ("But a direct representation by the government to a domestic violence victim that it will take certain action, followed by a failure to take that action, is not subject to the same policy analysis."). However, the Court is not persuaded that such is the case here. Plaintiff contends in her complaint that the Army breached its duty to her and was negligent due to its handling of her complaints of JAG, Jr.'s actions, specifically the Army's referral to marital counseling, the services at the Installation Victim Advocate, the issuance of the MPO, and Burch's assurances about the Army's handling of JAG, Jr. (Doc. 5 at 9.) In her response, Plaintiff focuses on her detrimental reliance on the assertions by Burch that "the Army would take care of her husband, he would not go back to the house until stable, and that she should not be afraid." (Doc. 39 at 3.) None of these statements promise specific action that departs from later discretionary decisions. The only arguable statement Plaintiff could use would be the Army's statement that JAG, Jr. would not return until stable but even this statement does not include a definitive action—e.g. a promise that the Army would confine JAG, Jr. for treatment and he would not be released until cleared. Moreover, "[t]he discretionary function exception still

11

applies and bars suit against the United States 'if the discharge of this state law duty involves judgments grounded in considerations of public policy.' " <u>Downs v. U.S. Army Corps of Eng'rs</u>, 333 F. App'x 403, 408 (11th Cir. 2009) (quoting <u>Ochran</u>, 117 F.3d at 505). Accordingly, the Court finds that Plaintiff's Counts 1, 2, 3, and 5 must be dismissed due to the FTCA's discretionary-function exception.

## II. THE INTENTIONAL-TORT EXCEPTION TO THE FTCA AND ITS APPLICATION TO COUNTS 1, 2, 3, AND 5

Although Counts 1, 2, 3, and 5 are dismissed above, the Court further considers the Government's argument for dismissal under the intentional-tort exception and finds that these counts are likewise barred by this exception. Pursuant to 28 U.S.C. § 2680(h), the government's sovereign immunity is not waived for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." The Government contends that this exception bars Counts 1, 2, 3, and 5 in Plaintiff's complaint because Plaintiff's negligence actions are based upon an underlying claim for an intentional tort. (Doc. 37 at 16.) In response, Plaintiff again argues that the special relationship imposed an independent duty upon the Government and the intentional-tort exception does not apply. (Doc. 39 at 16, 19.)

12

The Court finds that the intentional-tort exception bars Counts 1, 2, 3, and 5 in Plaintiff's complaint. First, it is clear that, in this circuit, a plaintiff cannot avoid the intentional-tort exception "by recasting a complaint in terms of a negligent failure to prevent assault or battery because § 2680(h) bars any claim 'arising out of' assault or battery." Reed v. U.S. Postal Serv., 288 F. App'x. 638, 639-40 (11th Cir. 2008). Second, despite Plaintiff's argument to the contrary, the Court finds that Sheridan v. United States, 487 U.S. 392, 403, 108 S. Ct. 2449, 2456, 101 L. E. 2d 352 (1988), is inapplicable to this case. "Sheridan stands for the proposition that where the United States would be liable to a plaintiff whether or not the tortfeasor was an employee, the claim is not barred by § 2680(h)." Acosta v. United States, 207 F. Supp. 2d 1365, 1368-69 (S.D. Fla. 2001), aff'd sub nom. Mendoza v. United States, 52 F. App'x 485 (11th Cir. 2002), and aff'd, 52 F. App'x 486 (11th Cir. 2002). In Sheridan, the

> Supreme Court permitted plaintiffs to bring a negligence claim against the United States when the government purportedly had been negligent in failing to prevent an off-duty employee from leaving a government hospital intoxicated and with a loaded weapon. The Court held that, although plaintiff's injuries stemmed from the battery committed by the employee, the negligence claim did not arise out of the battery because the government's duty was independent of any employment relationship between the employee and the government.

13

Reed, 288 F. App'x at 640. The Supreme Court held that it was "the negligence of other Government employees who allowed a foreseeable assault and battery to occur" that furnished a basis for Government liability that was entirely independent of the tortfeasor's employment status and identified two areas that created that independent liability: (1) the voluntarily adopted regulations that prohibited the possession of firearms on the naval base and required all personnel to report the presence of any such firearm, and (2) the voluntary assumption of providing care to a drunk and incapacitated individual.[1] Sheridan, 487 U.S. at 401, 108 S. Ct. at 2455.

This case, like in Acosta, is not a case where the employment status of the assailant has nothing to do with imposing liability on the Government. Here, Plaintiff alleges that the Government had a duty to protect her and faults the Army's handling of her complaints of JAG, Jr.'s actions, the failure to act promptly to the complaints made by Plaintiff, and the failure to supervise JAG, Jr. (Doc. 5 at 10-11.) Plaintiff relies on the fact that the Government was JAG, Jr.'s employer and had some measure of control over him as such. Thus, like the Eleventh Circuit explained in Reed,

---

[1] The Supreme Court, however, noted that it was not discussing whether there was a valid state law claim but left it to the discretion of the district court to pass upon whether the complaint stated a cause of action under Maryland law.

14

> the only basis here for liability to attach to the United States as a result of [Plaintiff's] assailant's actions would be via the employment relationship itself. Were the government aware of the assailant's purportedly violent history, it would only be as a result of the knowledge it gained as his employer and any liability on the part of the government would inure solely because of its status as [] the assailant's employer.

288 F. App'x at 640. Again, as stated, the Government was only aware and made aware by Plaintiff of JAG, Jr.'s actions because of his status as a solider—an employee of the Government. This information arose due to the employment relationship between JAG, Jr. and the Government, not because of an independent duty like that in Sheridan.

Finally, the allegation that there was a special duty undertaken by the Government does not disturb this analysis. Plaintiff bases her "special duty" on Georgia law which requires, by her admission, a situation in which the defendant had control over the third party who injured the plaintiff. (Doc. 39 at 10.) In this case, the only avenue by which Plaintiff's has alleged an ability by the Government to control JAG, Jr. is the employment relationship. Plaintiff brought her concerns and complaints to the Army because they were JAG, Jr.'s superiors and had authority due to the employment relationship to take action against him. Thus, the intentional-tort exception applies and Counts 1, 2, 3, and 5 are barred by the FTCA.

15

III. COUNT 4 AND THE UNAVILABILITY OF CORRESPONDING PRIVATE PARTY LIABILITY UNDER GEORGIA LAW

In Count 4, Plaintiff claims the Army Chaplain, Tony Turbin, contacted Plaintiff at JAG, Jr.'s request and thereby violated the MPO and the family violence protective order. (Doc. 5 at 4-5.) Plaintiff claims that the Government willingly and willfully allowed such violations. (Id. at 4.) The Government argues that Count 4 of Plaintiff's complaint must be dismissed because it fails to allege a cause of action under Georgia law. (Doc. 37 at 20.) The Government also argues that, even if the count did state a breach of a duty owed to Plaintiff, the claim is due to be dismissed because Plaintiff has failed to allege a physical impact, as required under Georgia law for claims of negligence. (Id. at 22.) In response, Plaintiff includes for the first time a reference to O.C.G.A. § 51-1-6 and § 51-1-8 and argues that the Chaplain's violation of the protective orders constitutes negligence per se. (Doc. 38 at 17.)

First, "[t]he FTCA creates liability for the United States only if the act at issue is a tort in the state where the conduct occurred." Miles v. Naval Aviation Museum Found., Inc., 289 F.3d 715, 722 (11th Cir. 2002). Thus, this Court looks to Georgia law to determine whether Plaintiff's fourth claim is actionable against the Government. See Martin v. United States, No. 16-23042-CIV, 2017 WL 5571573, at *2 (S.D. Fla. Nov. 20,

16

2017). Plaintiff contends that O.C.G.A. § 51-1-6 and § 51-1-8 provide a cause of action in this case.

O.C.G.A. § 51-1-6 provides that:

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

O.C.G.A. § 51-1-8 provides that the violation of a private duty, which may arise from either a statute or from contractual relations, gives rise to a cause of action. Plaintiff also cites to O.C.G.A. § 16-5-95, a penal statute that criminalizes the violation of a civil family violence order, and contends that there is an open question in Georgia law about whether a penal statute can form an underlying duty that can give rise to liability under O.C.G.A. § 51-1-6 and § 51-1-8. (Doc. 38 at 13.) Plaintiff cites to Reilly v. Alcan Aluminum Corp., 181 F.3d 1206, 1209 (11th Cir. 1999), and the Eleventh Circuit's statement that "Georgia courts thus far have not spoken on the extent to which a plaintiff may identify a state penal statute as the underlying duty that can give rise to liability under §§ 51-1-6 and 8."[2]

---

[2] In Reilly v. Alcan Aluminum Corp., 221 F.3d 1170, 1171 (11th Cir. 2000), the Georgia Supreme Court answered the certified question and informed the Eleventh Circuit that the General Assembly did not create a civil remedy for age discrimination

17

In Georgia, "[w]here the breach of a statutory duty can result in criminal liability, the statute is penal in nature and the violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is [purportedly] injured thereby." Murphy v. Bajjani, 282 Ga. 197, 201, 647 S.E.2d 54, 58 (2007) (internal quotation marks and citation omitted). "[C]ivil liability may be authorized where the legislature has indicated a strong public policy for imposing a civil as well as criminal penalty for violation of a penal statute." Id. "There is no indication that the legislature intended to impose civil liability in addition to the criminal sanctions set forth in a statute where, as here, nothing in the provisions of the statute creates a private cause of action in favor of the victim purportedly harmed by the violation of the penal statute." Murphy, 282 Ga. at 201, 647 S.E.2d at 58. See also Smith v. Chemtura Corp., 297 Ga. App. 287, 294, 676 S.E.2d 756, 763 (Ga. Ct. App. 2009); Jastram v. Williams, 276 Ga. App. 475, 476, 623 S.E.2d 686, 687 (Ga. Ct. App. 2005) ("We find nothing in the language of the statutes or in the criminal statutory scheme that provides a basis to infer that the legislature intended to create an implicit civil cause of action for damages caused by violation of the statutes.").

---

under the statute in question, O.C.G.A. § 34-1-2, but only allowed a criminal penalty.

O.C.G.A. § 16-5-95(b) provides that

> A person commits the offense of violating a civil family violence order or criminal family violence order when such person knowingly and in a nonviolent manner violates the terms of such order issued against that person, which:
> (1) Excludes, evicts, or excludes and evicts the person from a residence or household;
> (2) Directs the person to stay away from a residence, workplace, or school;
> (3) Restrains the person from approaching within a specified distance of another person; or
> (4) Restricts the person from having any contact, direct or indirect, by telephone, pager, facsimile, e-mail, or any other means of communication with another person, except as specified in such order.

Any person convicted of a violation of subsection (b) is guilty of a misdemeanor. O.C.G.A. § 16-5-95(c).

The Court finds that, in absence of Georgia law to the contrary, O.C.G.A. § 16-5-95 does not provide a private right of action. Nothing in the text of the statute indicates the General Assembly's intent to create a private right of action. The Court finds support in this conclusion in Troncalli v. Jones, 237 Ga. App. 10, 12, 514 S.E.2d 478, 481 (Ga. Ct. App. 1999), in which the Georgia Court of Appeals held that O.C.G.A. § 16-5-90, a criminal stalking statute in the same statutory framework as O.C.G.A. § 16-5-95, does not contain a private cause of action. Thus, the Court finds that O.C.G.A. § 16-5-95 does not create a civil cause of action and Plaintiff's fourth count in her complaint is due to be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 37) is **GRANTED**. As a result, the parties Consent Motion to Stay (Doc. 38) is **DISMISSED AS MOOT**. Plaintiff's complaint is **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 10th day of August 2020.

_____
WILLIAM T. MOORE, JR., JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA